All rise Please be seated Okay The last case on the morning docket is 5-16-0090 And gentlemen, counsel, you can sit at the tables As you can see, we are missing Justice Chapman She was not able to join us today But as you know, these arguments are recorded and available on the website to all And so she will have a benefit here in her argument as a part of her disposition in this case She will be participating So, Mr. Denny, would you like to proceed? May it please the court, counsel, my name is Brad Denny I represent the intervenors appellants Hardy E. Phelps Jr. and Audrey L. Phelps Natural grandparents of two children, Christina, age 14, and Madeline, age 13 This case is about grandparent custody and standing And the issues presented are whether the grandparents have standing to seek custody of these two grandchildren The first and foremost aspect of this case for us is the lack of a full evidentiary hearing on the issue of standing Okay, was there other evidence that you would have presented on the issue of standing? Yes, your honor Did you make an offer of proof of what that would be? We did not, we had three additional witnesses in the hallway that we would have called had we had that opportunity This case was scheduled for 3 o'clock in the afternoon The first half hour of the case was addressing the motion to dismiss We presented our case in an hour and then they had half an hour to present their case Well, just to ask you a couple questions here about that You do not claim standing under 601.2B5ABC, the new statute that sets out whether there's a deceased parent? We do not So the only issue really in this case is whether they're standing under the general provision that provides a non-parent may file for what's now called allocation of parental responsibilities Only if the child is not in the physical custody of either parent Right So that, I mean, I guess my question is what other evidence was there to put on about that issue because the operative facts are pretty clear Unfortunately the father died, the father had custody under a prior judgment The father was living separate from the grandparents at the time And then we have the time frame of when petitions were filed and so forth So that's what I'm trying to get to Well, whether you really needed more time to produce evidence on that very narrow issue Well, I think the cases that have addressed this before indicated there's certain criteria that the courts look at in determining standing And in this case there's a dispute about things such as whether the mother became a reasonable visitation, a reasonable interest in the children Whether she provided further support So we believe that the testimony of the mother and the testimony of the grandparent was in variance And that additional witnesses were necessary to fully present that issue to the court Well, the seminal case on this issue is Peterson, Illinois Supreme Court case In which the Supreme Court said upon the death of a parent, custody automatically goes to the other parent Well, the facts of Peterson are different than the facts here In Peterson, the children had resided with the father and the grandparents in the same home continuously Up until the date of the parent's death Right, that's correct In our case, the children had been living with the father and his fiancee outside the grandparents' home So in this case, upon the father's death, the children went back to the grandparents' house Because they had lived there essentially the last 12 years of their lives outside this one month period after father moved out But I'm still kind of keen on your claim that you didn't have enough time to present your evidence On that issue of how it was that the children got from their father's home after his death to the grandparents' home I don't believe that There's nothing else that you needed to present on that, was there? Well, I do not believe so But the other issues that the courts look at to determine standing, we feel that we did not have an accurate opportunity to present that evidence Okay And as a corollary to that, we had filed a motion for an in-camera interview of the children We felt that that was especially important given the factual dispute over the degree of interest that the mother indicated she had in the children The judge never ruled on that, he reserved ruling on that We made two oral requests to speak to the children in chambers So we felt that that also was especially important in determining the facts of the case Because the children were first-hand the ones with the best knowledge of those facts As I stated, the grandparents' home was the place where they had lived primarily the last 12 years of their life That was what they knew as home So it was a natural transition for them, upon their father's death, to go back to the grandparents' house There's nothing in the evidence that shows there's any consideration to go to the mother's house or that she expected them to come live with her All of this goes to what's in the best interest of the child, though, right? That's correct And we don't even get there unless your clients have standing That's correct For example, interviewing the children, let's just assume that the children would have gone in and said, we want to live with our grandparents What does that have to do with the standing issue? That does not have anything to do with the standing issue, however The court could have inquired as to some of the other issues as far as mother said she gave them presents, gave them, you know, regular exercise visitation, showed interest in them And those are factual issues that, again, are issues that the court's going to look at But doesn't that all go to whether or not there's been a voluntary relinquishment of the physical possession of the child? And here we're only talking about a matter of days after the father died That's correct, but that is not determinative If you look at some of the cases, for instance, in the Santa Cruz case, in the regular marriage to Santa Cruz The children, the grandchildren were actually with the grandparents for several months It was pursuant to an agreement with the natural parent that it was only temporary and she would come get them sometime Brownfield, the non-parent, I'm sorry, the step-parent filed a petition for custody on the day that the father died And in that case, that was sufficient for her to have standing So while that is one, the duration of the custody is one of the issues that the court is supposed to address The cases do not seem to be falling on that aspect itself I mean, what we're fighting about here is whether or not the standard is going to be best interest of the child I mean, there would still be nothing preventing your clients from filing to attempt to prove unfitness That's correct. I mean, that would be part of our case in chief once we achieve standing Well, you don't have to have standing under the custody provision in order to file based on unfitness, right? You can file for a guardianship, but you have to be able to prove unfitness Right, right That's my question as well The best interest issues that would have arisen by continuation of the hearing could still be raised Assuming the mother is given custody because there's no finding of standing Your clients could still then go in and petition for guardianship claiming that she's unfit At which point there will be all these other issues that you've talked about, correct? That's correct So, going back to what Justice Stewart said, we have one very, very narrow issue here about standing And I was concerned that there was not a lot of time allotted So, you said there were three witnesses in the hall I mean, what more could have been offered to show this abandonment That somehow the grandparents would have thought they had custody What were you denied due process-wise? Well, the issue... Well, first of all, we had to have abbreviated testimony The grandmother was only on for a few minutes And certainly I would have wanted to have more testimony from her About what? The issues were factually disputed by the mother In other words, mother claimed she had a close and loving relationship with the children That she was current in her child support That she had interest in the children's grades at school That she helped them with their homework Those are all issues that were disputed And I believe that the preponderance of the evidence Had we been allowed to have a full evidentiary hearing And elicit all the testimony that we wanted from the witnesses we did call And also present evidence from the other witnesses Would have tipped the scales in favor of finding a standing What do those things have to do with standing? Whether she gave them birthday presents for the last five years You know, I'm having a real hard time I mean, Peterson says that upon the custodial parent's death Custody automatically vests in the non-custodial parent And then from the way I understand standing rules Then from that point forward, there's an issue About how did the grandparents come to be in physical possession of the children? It would be one thing if the mother said You can have them, I don't want them After the death and then disappeared for a year Those grandparents would have standing But when the mother hasn't by consent Or agreement or abandonment or whatever I mean, but you're looking at that from the date of death forward Not what the mother did in the last ten years or whatever You follow what I'm saying? I just don't think those are issues that have to do with standing Well, if I may address that One of the factors that the cases subsequent to Peterson Have set out as a factor they look at Is whether the custodial or the natural parent Has maintained reasonable hesitation And maintained a reasonable degree of interest in the children Do you think that's consistent with the holding in Peterson? Well, I think the cases that have come down since Peterson Have maybe We're not bound by any of these other appellate court decisions As far as the interpretation of what the Supreme Court says the law is But I think the cases that have come down Have defined Peterson a little bit more broadly Than maybe the Peterson court itself did Right Well, even in Peterson they looked at hesitation, right? I'm sorry, pardon? In Peterson they looked at hesitation by the parent I believe they did, yes One of the other issues that we wanted to address Was whether there was a voluntary relinquishment of custody by the mother We believe that there was The mother took no steps to get the children She made no arrangements to pick up the children At what point in time? Are you talking about now? That would be from the time of death Until the petition was filed I believe that's That's what they gave She made no effort? I thought the record was contrary to that But she did in fact seek to get the children No, Your Honor, actually The evidence of The trial court did make that statement in its ruling However, if you look at the record Look at the testimony The evidence that was presented That was never the case If you're referring to the incident at the funeral home She addressed one of the grandparents And said, I want to make arrangements to pick up the children's stuff She never at any time said to anyone I want my children And that's what you would expect If somebody wants their children back They'd say, I want my children And if there wasn't If you say I'm going to pick up their stuff Aren't you picking them up? No Simultaneously with the stuff I mean, you've got to have a bed Then sleep in, whatever Well, I mean, I I've done a lot of divorces and custody cases And as you know There's a lot of disputes about property Which don't necessarily involve disputes about the children Okay, I see your point But in this case If we look at, you know, the period between the death Which was December 8th And when we filed our petition December 14th There was no effort to get the children If you look at the period from December 14th on Up to when we had hearings There was no effort to visit with the children She had text messaging and Facebook contact with the oldest child Which she had, you know, prior to this all happening But no contact at all with the youngest child, Natalie Thank you What do you have to say, sir? May it please the Court The burden of proof State your name into the record, please Daniel J. Gruger for the respondent Migyon Biggs Migyon Biggs now, previously felt Would you speak up? We just want to make sure that everything is recorded Okay, I can talk loud The burden of proof is on the grandparents To prove that they have standing in this case Not upon the natural mother The standard is whether or not, of course Physical custody was relinquished by the mother Prior to the time of the filing of the petition by the grandparents On December 15th, four days after the funeral And that's the time frame that we have to look at As far as whether or not physical custody was relinquished It's whether the parent has voluntarily and indefinitely relinquished custody In this case, the mother did neither of those things From the time of their divorce in 2004 Up until the time of the death of the father on December 6th She exercised her visitation on a regular basis The testimony of the grandfather Not even the mother's testimony, which corroborated it But the grandfather was that at most The longest period of time that she went is about a month Without seeing the children Now, there's more than one way to have contact And contact ties into this Cards, letters, presses, that's the first type The second type is phone calls, e-mails, text messages, and Facebook And then the third type, of course, is the physical custody By her testimony, which was not rebutted by the grandparents By her testimony, she stated that she had contact with the children on a weekly basis This is sufficient for purposes of not relinquishing physical custody With regard to her relationship In seeing to it that she has responsibility for care and welfare of the children The Huffton case goes into a further analysis About when you have voluntarily and indefinitely relinquished custody For purposes of standing, being attributable to a third party In this case, grandparents And it's a three-pronged test The first is who was responsible for the care and welfare of the child Prior to initiation of custody proceedings And she was that She was involved in the children's lives She regularly exercised her visitation And she had frequent contact with the children She did not relinquish that We're not talking about a situation like in Dial Where she potentially would have walked away from the children for a long period of time And more specifically, with regard to the contact that she had As far as responsibility and care Prior to initiation of the custody proceedings With regard to the mother's actions Her visitation schedule was two days a week from one till five p.m. That's it She testified, and this was unrebutted That she frequently exercised much more than that By working it out with the deceased father prior to his death, of course They had agreed that she would come and see the children more Much more often than the two days a week from one till five In fact, she regularly exercised weekends of visitation In addition to other visitation periods She bought presents for the children She participated in their activities by attending them She went to school events and functions Now, the father I'm sorry, the grandparents Have contended that The mother never sought to ask for the children back after the death of the father And this is not true The judge is spot on in his ruling Where he found, as a matter of fact That at the funeral, which was three days after the death of the father That the mother attempted to speak with the children And wanted to When she said she was picking the children's stuff up She meant that she was taking them to live with her The judge made that finding Because in his order on page two in the middle He specifically states that at the funeral home The mother would be picking the children's stuff up And taking them to live with her That's an important event Because that starts the process of the mother In trying to recover possession of the children Following the father's death Now, interestingly in the testimony of the grandfather He did not Even though he said at most The mother never Wouldn't see the children for at most a month During periods of time He didn't define when those periods were In relation to the death of the father How often they had occurred And whether or not it had any impact on the children All of these are factors to considering Whether the mother maintained sufficient contact with the children So as to be responsible for the care and welfare of the children Prior to initiation of the custody proceeding The first prong in the Huffman case The second prong is the manner in which Possession of the child was acquired The manner in which it was acquired in this case Was immediately after the death of the father The grandparents took possession of the children They did not call the mother and say Is it okay if we keep the children The mother did not tell them You can voluntarily keep the children first For a short period of time Like in Dial And in fact in the Dial case With regard to this issue The father in that case had actually told the grandparents You can temporarily keep them And it was a year before he filed anything And the court found That the grandparents lacked standing in that particular case The Peterson case is also demonstrative It states that upon the death of one of the parents The other parent automatically invests with custody Unless it can be proven That the other parent had failed to maintain Responsibility and care for welfare They go through the same type of analysis Whether the other parent had voluntarily And indefinitely relinquished custody Preceding that death That's the only exception to it That's why the Peterson case In conjunction with Dial is so significant Because those two cases Demonstrate what you have to show We're not talking about a situation Where the mother had had nothing to do With the children for years Or even months We're not talking about a situation Where she had had no contact with these children And they were basically strangers to her For years or months She had a relationship with these children In so far as she was able to In fact in excess Of what her visitation schedule was The visitation schedule The visitation was the first limiting factor With regard to her contact and involvement With these children And she exceeded that And now for the grandparents to come in And argue that she didn't have a sufficient relationship Because she had voluntarily relinquished That relationship Prior to the death of the father Is more than disingenuous And as far as the argument by the grandparents Oh we didn't have an opportunity To put on sufficient evidence Now wait a minute They put on their case first And if you look at the transcript They put on their witnesses first The grandfather could have testified That Because he lived with the children And the father Up until about a month before the father's death So he had sufficient knowledge That he could have stated these things To the court at that time He could have said The children never called their mom The children never talked to their mom The children never had The mother never attended any of their activities Or events Or school functions The children never exercised visitation But he didn't say any of that Because And so he had his opportunity To say those things And to define the periods of time In which The mother Went for a month at a time or so At most In exercising visitation Leading more close in relationship To the day of the death of the father But in the court's order And rightly so The court found And I quote from the top of page three Of the second sentence The time frame for this visitation pattern To which grandfather alluded Talking about the one month Up to one month without seeing the kids Is unclear And I agree There was no testimony put on with regard to that And they had their opportunity to do that And didn't do that So the presumption is That There is sufficient contact By the mother Immediately preceding the father's death And the date of looking at Whether or not this test in Hufton Is fulfilled Is the date of the filing of the plea The date of Well, the death of the father initially And then the filing of the plea five days later The third prong in the test Is the nature and duration of possession In this particular case The children lived With the grandfather And the grandmother And the father Up until about a month before the father's death On December 6th Up until that time The grandparents would have had Day-to-day contact with the children But that doesn't mean That the father was divested Of his custody With relation to the children There's no testimony That the grandfather or the grandmother Put on Saying that Dad had a long lingering illness And he died And during that long lingering illness We were taking care of the children And we were making sure They got to school And we were making sure They got to bed We were making sure They got to their school activities Et cetera, et cetera There was no testimony about that Because that's not what happened Quite frankly There was also no testimony That dad simply didn't care He had nothing to do with the children And so the grandparents Took over that role There's no testimony about that either The testimony was That the dad died on December 6th And had moved out Of living with the grandparents Home about a month before that That was the testimony And that's all the testimony That the court had to deal with  That the dad is the one Taking care of the children So the grandparents Were never the sole providers For any significant period of time And that might have made a difference If they had been If dad hadn't been And the mother also hadn't had An extended visit You know, visitation periods With the children Or extended periods of time That might have made a difference But there was no testimony about that either This fits into none of the exceptions That the Huffton case Santa Cruz case That the Peterson case Detail as far as a basis For providing for standing In a situation where you have Lack of involvement On the part of the non-custodial parent When the custodial parent dies They're not ready to step in And fulfill that role This fits into none of those cases And one of the things That the mother said With regard to Why she didn't exercise All of her visitation Is significant At the time of the father's death The children were 14 years And 13 years old They were in 8th grade And 7th grade respectively They were starting to have A life of their own And she testified That these two daughters Had things that they wanted to spend time Not with dad Not with mom Not with grandparents But with their friends, naturally And so she would forego Some visitation periods So that they could spend time With their children But she always was available To spend those visitation time periods And that also is significant She never testified That she voluntarily Gave up visitation periods Just because she didn't feel like it Or didn't want to Or wasn't interested In the children She never testified to that Nor did the grandparents There was no testimony Along those lines And the children Did have activities That they were involved in One specifically in band That also came out in the testimony So as far as the reasons Why she missed Even the few visitation periods That she did Were for reasons Associated with the children's desires And the children's wants And the children's schedules For school For activities And the mother's work schedule In conjunction with it too Because she was working full time She stated that in the testimony So the visitation that she exercised Was not inordinate Insufficient Inadequate In any way, shape, or form It meets the standard Under Huffington test To prevent The voluntary and indefinite Relinquishment of custody That the court is looking for To provide standing To the grandparents Didn't exist in this case As far as some of the issues About The burden of proof itself Is there for purposes Of facilitating Parents' superior rights We know that a parent Has superior rights To the custody and care Of their own child Except for rare circumstances So it takes The grandparents Proving these things As an extraordinary circumstance As a basis for even getting Their foot in the door To be able to take away The custody of children From their own parents That's why the standard Is so stringent That's why it's so critical Especially in a case Where you have a situation like this With regard to One of the things That was argued By the grandparents is The mother never paid Child support She was way behind In her child support What they failed to state And show Is that And this is one factor That could show Indifference on the part Of a parent Or disinterest On the part of a parent Or not concerned About the care And welfare of a child On the part of a parent But there were two parts To this that they left out First of all During the time period The mother got behind She got behind Because she was Out of work Because she had More children To provide for That she had More bills to pay for Than what she had income And she worked At a very low paying job Even at the time Of this trial She was not making A great deal of money Working at International T And the second thing is Even with that She managed to get Caught up about a year And ten months Before the time Of the father's death Such that the contempt Had been discharged And that was no longer An issue She was caught up In her child support And she testified to that Right She did testify to that In fact the state Came in later And says By the way mom You've overpaid Your child support So we just recently Filed a petition To recoup The overpaid child support She's actually Ahead of the game At this point in time Because of the death Of the father Terminated the child Support obligation So yes Her testimony was accurate She was current At the time of the trial And even before that So as far as The child support issue Is concerned That does not inhibit Her ability To be disinterested In the care And welfare Of the children To the point Where it would meet The Huffington requirements And therefore I ask that you Uphold the decision Of the trial According to this matter One last thing If I have a moment Is with regard To the testimony That was stated By the grandparents In their brief They stated that The mother did not attend Things involving the children And did not take the children To any medical appointments There was objections To that testimony At the time of the hearing And because it was based On lack of knowledge Was the objection By Ms. Amy Spector Who tried this case I didn't try it And the court said Well, if you know Whether or not She did these things You can testify to it So I submit That there are arguments That she didn't do those things Specifically as objected to And preserved as an objection Thank you Thank you, sir Any rebuttal? Yeah, yeah It was argued That the mother Saw the children more often Than she was allotted At the time of the divorce The divorce was by default She didn't even care enough To come to the custody Hearing She was given two days One to five p.m. Early No overnight visitation Until she had a stable home That was never modified She never took any steps To modify it Secondly Mr. Groninger argues That the judge interpreted What happened at the funeral home To mean that Mother went in custody Of the children That is not what the order says The order says That she stated that And we submit That the judgment is mistaken About that testimony It wasn't an interpretation It was I believe I may have even A quote That that was the testimony And the evidence In the record makes clear That that was not the case She never told anyone She went in custody of the children But she testified she did Right No, I don't believe she testified That she told her The order says Picking the children's stuff up In court Do you agree that was said? I agree, yes Yes, we agree with that Secondly As far as having contact With the children on a weekly basis That is not the same as Seeking custody of the children Or asking that they be returned to you Well, I'm sorry Let me correct my question She testified that she went over At the funeral home To talk to the children To discuss With them Coming to live with her But that got interrupted In this whole She testified to that So it never actually happened But she was said Since what she was going to do Correct That's what she testified to At the time of the hearing Okay Now whether that was Truly her intent We don't know Because she talked to the children Or went to talk to the children They wouldn't talk to her But initially She went to talk to The decedent's fiance Then she went over To talk to the children They wouldn't talk to her Then she got in an argument With her ex-husband But isn't it true That Mr. Grimmaker Stays the right burden Which is voluntarily And indefinitely relinquished custody And that is really The burden you have to meet A very heavy burden Yes, Your Honor And I would like to address Particularly His arguments in regard to Responsibility For the care and welfare Of the children Because I think that's where The most I mean, don't you have a problem Here that he addressed Which is the fact that Your father lived with the grandparents And so The father never relinquishes Custody of the children To the grandparents It's a joint living arrangement So you have the father's Custody issue here And you have to show Relinquishment somehow To the grandparents Well, that would be true, Your Honor If I may address it That would be true If he had never moved from that residence In this case He moved from that residence Was gone for a month Then the children came back And that's what differentiates this case from But when did they come back? On his death, correct? When he died, yes But had he moved out and left the children with the grandparents We'd have a different story Well, that's true That's true Provided she had not done anything Right, that's correct I'm assuming that, yes Thank you But some of the issues that Mr. Griminger raised were in dispute And he's provided you with Mother's Viewpoint But a lot of those facts were in dispute And that's why Additional witnesses, I believe Would have been helpful Just, you know, as far as maintaining a reasonable interest In the children She never went to a single parent-teacher conference In 14 years or 9 years She If they got sick, she returned them To the father, never went to a single Doctor, dentist Optometrist appointment Never took them To the doctor In terms of financial support The record is clear That By 2008, she earned $3,353 in backed house board When she's only obligated to pay $27 a week She went from job to job She was quit jobs She received unemployment Here's the house board Thank you Thank you Thank you gentlemen As you know, this is an expedited case Under rule of 311A So a decision is due by August 5th And we hope to have that to you Thank you so much We'll be in recess Till 115 All rise